Filed 9/20/16  In re I.V. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re I.V., a Person Coming Under the Juvenile Court Law. | D070180 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14984B) |
| v. | |
| L.V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Jesica Fellman, Deputy County Counsel, for Plaintiff and Respondent.

# I

## INTRODUCTION

Mother appeals from a judgment terminating her parental rights and selecting adoption as the permanent plan for her child.[1]  She contends we must reverse the judgment because there is insufficient evidence to support the court's findings that the child, who is medically fragile, is likely to be adopted.  We are unpersuaded by this contention and affirm the judgment.

# II

## BACKGROUND

The child was born at 25 weeks' gestation and spent the first six months of life in a hospital.  Before the child's scheduled discharge from the hospital, the San Diego County Health and Human Services Agency (Agency) filed a juvenile dependency petition on the child's behalf.  The petition alleged the child was a dependent child because the court had previously removed the child's sibling from the parents' care and the parents had not ameliorated the circumstances necessitating the sibling's removal.[2]  (Welf. & Inst. Code, § 300, subd. (j).)[3]

---

[1]     We refer to the parties generically to preserve confidentiality.

[2]     The court initially detained the sibling because of the sibling's exposure to domestic violence between the parents.  Shortly after the sibling's detention, doctors discovered the sibling had multiple arm, leg, and rib fractures, which were not accidental and occurred while in the parents' care.

[3]     Further statutory references are also to the Welfare and Institutions Code unless otherwise stated.

Following a contested adjudication and disposition hearing, the court sustained the petition and adjudged the child to be a dependent child. The court did not order reunification services for the parents because the child's sibling had been adjudged to be a dependent child due to the infliction of severe physical harm and the parents were not receiving reunification services for the sibling. (§ 361.5, subd. (b)(6) & (7).)

The court initially ordered the child to be placed in a licensed foster care home. The court later ordered the child to be placed with a relative caregiver interested in adopting the child.

Approximately four months after the child's placement with the relative caregiver, the court conducted a contested hearing to select and implement a permanent plan for the child. (§ 366.26.) At the time of the hearing, the child was a little over a year old and was characterized as medically fragile, but in a stable and manageable condition. The child suffered brain damage to an unknown extent at birth and had exam findings concerning for cerebral palsy. In addition, the child was dependent on a gastronomy tube because of paralyzed vocal cords and had noted developmental delays requiring both occupational and physical therapy. Despite these challenges, according to the child's court-appointed special advocate, the child was "happy and pleasant," "laughs often," and "is adorable and easy to love."

The Agency's social worker believed the child was adoptable because the child's relative caregiver had continually expressed interest in adopting the child from the outset of the case, she understood the legal and financial responsibilities of adoption, and she was committed to the adoption process as well as to providing the child with a stable,

3

nurturing and safe environment. Although the relative caregiver already had one child and was expecting another, she did not work outside of her home, she enjoyed taking care of people, she was a certified medical assistant, and she had full-time in-home nursing services to help her with the child's care.

During the time the child had been with the relative caregiver, the child continued to make medical progress and was observed by a social worker to be "healthy, happy, and calm." The relative caregiver also reported the child was "a good baby" and she had no issues caring for the child.

Besides the relative caregiver, there were 10 prospective families within San Diego County willing and approved to adopt a medically fragile child. In addition, the child's initial foster parents told the child's court-appointed special advocate they were very willing to be the child's caregivers again and desired to adopt the child if the opportunity arose.

Based on this information, the court found there was clear and convincing evidence the child was likely to be adopted. Therefore, the court terminated the parents' parental rights and selected adoption as the child's permanent plan.[4]

---

[4] Mother does not contend any of the statutory exceptions to adoption apply (§ 366.26, subd. (c)(1)(B)) nor is there any evidence in the record to support their application.

# III

## DISCUSSION

### A

At the hearing to select and implement a permanent plan for a child adjudged to be a dependent child, the court must terminate parental rights and order the child placed for adoption if the court finds by clear and convincing evidence the child is likely to be adopted. (§ 366.26, subd. (c)(1).) "In making the determination of adoptability, the juvenile court 'must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family.' [Citation.] 'A child's young age, good physical and emotional health, intellectual growth and ability to develop interpersonal relationships are all attributes indicating adoptability.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1526.)

Generally, " '[o]n review of the sufficiency of the evidence, we presume in favor of the [judgment], considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the [judgment].' [Citation.] [¶] The 'clear and convincing' standard specified in section 366.26, subdivision (c)(1), is for the edification and guidance of the trial court and not a standard for appellate review. [Citations.] ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." ' [Citation.] Thus, on appeal from a judgment required to be based

5

upon clear and convincing evidence, the clear and convincing test disappears and 'the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' " (*In re I.W.*, *supra*, 180 Cal.App.4th at pp. 1525-1526.)

B

The evidence in this case shows that the child, while medically fragile, is "happy and pleasant," "laughs often," and "is adorable and easy to love." There are 10 families in San Diego County willing and approved to adopt a medically fragile child, and the child's initial foster parents, who are well-acquainted with the child's fragility and special needs, have indicated an interest in adopting the child. Further, the child's current relative caregiver has indicated an interest in adopting the child from the outset of this case and has remained committed to the child's adoption notwithstanding the child's fragility or the presence of other young children in her home. " 'A prospective adoptive parent's … interest in adopting is evidence that the child's age, physical condition, mental state, and other matters relating to the child are not likely to discourage others from adopting the child.' " (*In re. I.W.*, *supra*, 180 Cal.App.4th at p. 1526.) " '[I]n some cases a minor who ordinarily might be considered unadoptable [because of] age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child.' " (*Ibid.*) Accordingly, we conclude there is ample evidence to support the court's finding the child is likely to be adopted.

6

IV

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


NARES, J.